Yes, Your Honor, this case opens off with 2-17-1045. The Midwest Club, Incorporated. Defendant Appellant is Ansar Ahmed, Tapia Ahmed, Ibrahim Ahmed, Yusuf Ahmed, and West Suburban Bank. Not individually, but as a trustee of the Midwest Club v. Files 5, dated March 8, 2010. Defendants have to leave. Argument on behalf of the plaintiff's appellant, Mr. David P. Hollander. Argument on behalf of the defendant's police, Mr. Michael W. Houston. All right, thank you. Mr. Hollander, on behalf of the plaintiff's appellants, you may proceed.  My name is David Hollander. I represent the plaintiff's appellants in this matter. At the court's direction, I will omit the recitation of facts. I'm, of course, happy to answer any of those questions. The Amheds purchased a home in this serene park-like community, a $1.8 million home, knowing that they were buying into a community defined by those park-like characteristics and that they would be subject to certain restrictions. The circuit court there... How do we know they knew that? So, we allege... The bylaws are recorded, for one thing. The governing documents require that any seller give notice to a subsequent owner. Wasn't there a dispute as to whether or not he ever received them? There was, but this was dismissed on a 619 motion. Right, okay. But we do allege that not only did they sign an acknowledgment, Ibrahim Ahmed, the adult son, signed an acknowledgment that he had received the bylaws and declarations prior to cutting down these trees, we also allege that the Midwest Club's property manager, in paragraph 21 of the complaint, was on site and informed Ibrahim Ahmed, who was directing this work, that it would be a violation. The exhibits attached to the complaint, in particular the three letters attached as I, J, and K, those are two letters from the Midwest Club to the Ahmed family and one in return. Those are all that reflect repeated conversations between the Midwest Club's property manager, Sue Chelios, and either Ibrahim Ahmed, the adult son, or Ansar Ahmed, the father of the family. Well, so one of the central issues in this case, the defendants have vehemently alleged that they did not have... to contest the fines here. So tell us why that is not true. So the circuit court essentially found that there had to be an in-person meeting before the board of directors before any fine could be levied or assessed. In fact, the circuit court said any punishment when the statute clearly applies only to fines. But both the statute and well-established principles of due process require... indicate that it's a flexible standard that doesn't have any strict confines of how it applies in a particular situation. That is a principle that was well-established in Matthews v. Eldridge. We're speaking in generalities, but give us the specifics. The Plano County Emergency Board meeting two days after the trees were cut down but did not invite the defendants. Then there was a letter they sent. They wished to speak to the board. The board seemed not interested in hearing from them. They attempted to speak to the board. Where was the meaningful due process that was given consideration to them? Where specifically is it here? I know the general rules, but tell us how it was done here. So what was done here is that there were repeated conversations with the Midwest Club's property manager. Nothing in the act. Are you saying that was prior to that December 22nd letter? Prior to and after. And also note that no fines were imposed until January 1st when they began in 2012. The precipitating event for the January 1st beginning of the tolling of these fines was imposed prior to that. In other words, if you don't replace it by the end of the year, then the fines start to clip in. So why isn't that a sanction imposed prior to January 1st? Well, I will admit that's the precipitating effect. But both before and after that hearing, there were repeated conversations with the property manager. But on December 22nd, didn't the board basically say to them, we are interested in hearing from you? They said this is an admitted breach. It was an admitted breach. And so the purpose of meeting with the board would be there is the rules require written notice before any trees are removed. There was no written notice. At no point in this case have any of the defendants contended that they received written notice. In fact, in an earlier answer to the complaint, Ibrahim Ahmed, the allegation was at some point in 2011, Ahmed, referring to Ibrahim, cut down two large fully mature trees on his property without prior written approval of the board of directors in violation of section 2.2.2 of the landscape manual. And Ibrahim Ahmed admitted that allegation. But how does that tie into the fines? Were they given a meaningful opportunity to be heard on and contested fines? Not before the board. But the basis of the dismissal was exclusively based on the Association Act. And the Association Act says notice and an opportunity to be heard. The legislature understands that in some circumstances the board has meetings, in-person hearings. They could have required an in-person hearing. The legislature did not do that. All the act says is notice and opportunity to be heard. When you look at the Fischetti case versus Schomburg, are you familiar with that case where the red light violation? Did you cite it? I don't believe either of us did. I'm not sure. Well, that case talked about affording due process and an opportunity to be heard. And in that case, the court found that the individual, Fischetti, was given, they were afforded due process because they could come in and dispute what happened, or they could write in a letter disputing what happened. In this case, do we have that opportunity by the meds to dispute what was going down, the fines? Because in the red light violation case, you're going to get fined, and you have an opportunity to say, wait a minute, that wasn't me, or let me give you my letter and tell you why I didn't violate. And like Justice Hudson said, did they have an opportunity to dispute those fines? They had an opportunity and, in fact, did raise the issue of those fines with the property manager, Sucellius, and they had the opportunity at any point in time to write to the board. These are board members or people who are part of the community. Who imposes the fine? I'm sorry? Does the board impose the fine? The board does impose the fine. Would the opportunity to be heard go to the board, not to someone else? Certainly under some circumstances. But under this circumstance, there is an admitted breach of the covenants. Therefore, the fine is just done. There's no opportunity to discuss it, to challenge it, to seek something, present some mitigation. There's no opportunity to have an in-person hearing. At any point in time, any of the homeowners could have written to the board. In fact, they did on January 4th to explain their position. Go ahead. And the letter, when they first notified the anomalies of this breach, said, if you have any questions or concerns, please let me know. And they said, if you don't fix this within a month, then the fines will begin to accrue. The opportunity was given and the family sent a letter. However, where was there any indication then that the board considered the letter? Wouldn't that have been the proper procedure? Okay, we've got this letter, but we've considered this letter, but we don't agree with it for these reasons. There's no indication in this record, is it, that the board even looked at the letter, considered it or not? Not in this record. But, again, I would note that this is up on a motion to dismiss. But we do allege that even after that meeting and after the fines had begun accruing, there were repeated board meetings where the homeowners were present and we discussed the fines and the violation. And so even if that threshold of notice and opportunity to be heard had to have been some sort of in-person hearing and it wasn't satisfied at that initial point, these fines accrued on a daily basis after, as there were repeated ongoing meetings between the Midwest Club and between the Ahmed family. And so at some point as those fines were accruing, there was adequate notice and opportunity to be heard undeniably. And they were saying, okay, we're going to get it done here, we're going to get it done there, and they weren't getting it done. The substance of those conversations I'm not sure of. That's not in the record. But ultimately we had to eventually file a lawsuit and get an order ordering that the trees be replanted. That order was not initially satisfied. The court reordered it, and then ultimately the trees were replanted. Initially you pursued the wrong party, didn't you? We pursued the party that was not the record owner, yes. So was that at the point that the injunction was entered? When the injunction was entered, Ibrahim Ahmed, or excuse me, Ansar Ahmed, the father, was the party to the suit. And that was the improper party, correct? We don't think that was the improper party. I mean, he wasn't the owner of the property. He was not the record owner of the property, but there were repeated allegations of an agency relationship. Ansar Ahmed, the father, repeatedly refers to the property as his property. In that January 4th letter he refers to it as his property. He voted in elections for the board, representing himself as the owner of the property. And when they first moved in, he signed for gate passes, representing himself and Sufiya Ahmed as the owner of the property. And we repeatedly allege in our complaint that we had no basis for knowing that the trust was the owner of the property. And the first time we were told that was in September of 2014. Which is an obligation when you file a lawsuit to know who the property defendant should be? Well, when we filed the lawsuit, we had a basis for filing suit against any of the residents of the property. The bylaws authorized that. At some point during the litigation. That was a bit of a problem for the trial judge, too. Yeah, the trial judge later dismissed the other defendants. But throughout this negotiation period, before we filed the lawsuit and during the first several months to year of the lawsuit, there was no indication that there was a record owner. In fact, under the bylaws, whenever the homeowner sells or leases the property, they have an obligation to inform the association that they're doing that. And they did not do that in this case. So there was... And the deed putting the property into a trust was not recorded until after the trees were cut down and after the board had voted on this issue. So it had no way... I mean, the agency standard requires a reasonable person to have reason to believe that that agency relationship did not exist. And here, by every indication, even in sworn answers to this complaint, Ibrahim Ahmed represented it as my property. He admitted to allegations that it was his property. And so the board would have had no way of knowing who was the record owner in this particular circumstance. And so I also want to briefly address the issue of attorney's fees. The circuit court, in dismissing the breach of contract count, said, because I am dismissing the case, there is no basis for the award of attorney's fees. That is an error. The Midwest Club prevailed in obtaining a mandatory injunctive count. With the wrong party. So does that play in at all? Well, it was with the party who was an agent of the correct party, if we want to use that terminology. It was a party who had represented and verified pleadings that he was the owner of the property. And so the standard is obtaining the relief that you are a prevailing party if you obtain some of the relief that you are seeking. What portion of the fees, then, would you think you would be entitled to? I don't know, because the circuit court did not hear a fee petition or do make any sort of determination as to what fees are reasonable or what fees were incurred as to what count or as to what defendant. The circuit court simply said there is no basis for the award of attorney's fees. So you never got to a hearing on attorney's fees? There was no hearing on attorney's fees. So what are you seeking from us? So we are seeking that the court reinstate the Fifth Amendment complaint and reverse the circuit court's order, wherein the circuit court dismissed the breach of contract count. If the court is not prepared to do that, we think at the very least it should be remanded to the circuit court with instructions that the circuit court exercise its discretion in determining the amount of the fees and what fees were reasonably incurred, but that the finding that there is no basis for awarding attorney's fees, which is what the circuit court found, is not supported at all. So you're saying because you prevail on the mandatory injunction part, which would generally give rise to some fees, even if you pursued the wrong party, you're saying it was error for the court to throw that out completely after you had already prevailed on the mandatory injunction. Is that what you're saying? Yes, Your Honor. And so I would also just note that the act upon which the defendants rely, that act itself recognizes that the board members are volunteers and there shouldn't be these barriers. If I could just briefly finish my thought. Go ahead. The act requires notice for hearings of the membership. It has no such requirement for the board. The act also says that the board can use appropriate technological means, which is defined as really anything that's secure, to make any vote that it makes. So the notion that there must be some sort of an in-person hearing before the full board really isn't supported when you read the act as a whole. No, but you still have to concede there has to be some meaningful opportunity to be heard, isn't there? Yes, there has to be notice and opportunity to be heard, yes. But the statute doesn't specify whether that has to be before the board or before the property manager. Thank you. Thank you, Mr. Coleman. Excuse me. I'll be careful. If that even helps. Good morning, Your Honors. Good morning. May it please the Court. In response to counsel's argument this morning of an admitted breach, we dispute that contention. We admitted the trees were cut down. Whether this was a breach was yet to be determined because the true issue in this case, of course, is the lack of due process afforded to my clients. We never got an opportunity to explain the necessity of cutting the trees down. They did say it was because raccoons were going from one tree to the house and the other tree was like dead or sick or something. Right. That's what we said. That came out in litigation. But prior to the fines being assessed. Didn't it come out as like a board hearing, too? Well, it did. My clients repeatedly tried to get this issue on the agenda. They were flatly refused at each and every attempt. But most importantly, I think it all relates back to the initial emergency or secret meeting that occurred two days after the trees were cut down. Because it was at that meeting that the case was tried and decided and it was over. Can you give us your summary? Because he alluded to that the law provides some court-on-court flexibility. When you talk about what is a meaningful opportunity to be heard in due process, tell us specifically why you believe your clients did not receive a meaningful opportunity to be heard and present their case. For that, Your Honor, we point right to the December 22nd letter that came directly from the President of the Board. That letter explained the one prior letter, the December 2nd letter, and further explained what happened at the emergency meeting that occurred on November 22nd, two days after the trees were cut down. And that December 22nd letter, in no uncertain terms, the Board President acknowledges that my clients were trying to get the issue in front of the Board. And she said that she understood that my clients had informed the property manager that they would not replace the trees until they met with the Board. And she says the Board acted upon your violation in the required proper manner and there was no need for a meeting with the Board. You clearly broke the rules. The decision is final. That's what they announced to him. They were not going to have the meaningful opportunity. The issue has already been decided. Yes, they decided it had been a violation and the fines had already been set. And they flatly refused his request to put the issue in front of the Board. At that point, they hadn't yet articulated why the trees had been cut down. This came out in affidavits and possibly at Board meetings later on that following year. But they were never officially on the agenda at any Board meeting. They were trying to essentially yell from the back of the room at these large Board meetings. So we adamantly dispute that there was any meaningful opportunity to be heard at all because the case was decided two days after the trees were cut down. And that itself is problematic because the bylaws of the association don't allow for these emergency meetings without notice. The bylaws of the association only authorize what they call regular meetings or special meetings. This was not a regular meeting, so it had to, therefore, have been a special meeting. A special meeting cannot occur on less than three days' notice. Was that given here? The meeting only occurred two days after the trees were cut down, so it couldn't have been. So one of our arguments is that they were operating outside the confines of their own bylaws. And, therefore, any result that came from that secret or emergency meeting is void from the get-go, notwithstanding the fact that they didn't give any notice to my clients whatsoever or allow them to be heard. It was in the bylaws, though, right, that they couldn't cut down the trees? It was in the bylaws that, right. But, again, that doesn't provide for emergency situations. There's a whole host of reasons why things may need to happen outside the confines of the rules, necessity or any number of reasons. And the point of the act requiring notice and the opportunity to be heard is for them to be able to present their defense so the board can determine whether this was required or not and determine at that point whether fines were appropriate. I think your position on that is fairly clear, particularly here. But tell us about those fines. I mean, he has a point. There was a one point. Was there not a mandatory injunction granted by the trial court at some point? I would argue semantics on that. It was an agreed order. My client entered into an agreed order that said, well, we'll plant the trees, sure. And the trees were eventually replanted. However, so we get to the point at least there was an order entered ostensibly entering an injunction, correct? Right. So tell us why they wouldn't be entitled to any fees at all after that happens. Well, the trial court has discretion on attorney's fees. And the attorney's fees in this case were extraordinary. I mean, we cite the numbers from the Fifth Amendment complaint that say at that point, when the Fifth Amendment complaint was filed in June of 2016, they had already incurred $120,000 in attorney's fees for a number of different reasons. A, suing the wrong parties. Well, wouldn't that be an issue that would be resolved before the trial court if we would remand it for determination of attorney's fees? Because there was no attorney's fees amount resolved here, correct? Well, the attorney's fees were resolved at zero, essentially. Right. Right. So our argument is that the court had discretion to do that because the court had witnessed not only the litigious nature of the plaintiff association, but what I would characterize as missteps by their former attorneys, not counsels in this room. Well, that's good to know for the record. I'm sure they appreciate that. On August 16th, June 11th, 2013, default judgment was there, correct? Yes. And then on August 6th of 2013, there were damages of $68,179.77. Were attorney's fees included in that, do you know? They were not. No attorney's fees? That was $100 a day. Another problem, well, that's not the issue, but we have defenses, I believe, to that if we were to get back to the trial court. The delay in filing the case, they sat on their hands for a long period of time accruing $100 a day fines and then filed a suit for an extraordinary amount of money. Well, they gave them an opportunity to remedy that, didn't they? I mean, they kept coming to the board meeting saying, oh, we're going to plant them, and they said, okay, come back with plans, and then they never showed up. And so, I mean, it was both of them were delaying, weren't they? I would dispute that my clients were delaying anything. I mean, they firmly believed they had safety issues and there were structural issues with the house that these trees were a potential damage to the house. So they wanted to get that issue in front of the board. They were never afforded that opportunity. Then why did they go there and say they're going to submit landscaping plans by June 12th, and then June 12th they didn't show up, and then they come back on June 10th without any plans, and August 12th without any plans? I mean, they were the ones saying we're going to get plans, and then they kept coming. They wouldn't come back or they would come back without plans. Well, that's a separate issue, Your Honor. That wasn't simply an attempt to stop the fines from accruing. They intended to do landscaping. I mean, they were going to replant the trees regardless of whether they got into litigation or not. And at that point, they realized, okay, we need to get these plans in front of the architectural committee. I guess my point is that both sides are dragging their feet, it sounds to me. Well, that is one possible interpretation, but we still go back to the fact that the case had been argued, tried, and decided two days after the trees were cut down. And the issue of the fines, you know, maybe at that point the fines would have stopped accruing at $100 a day. But they should have never started to accrue at $100 a day because we were never afforded any meaningful opportunity to explain ourselves. And that is clear from the board president's own words. I mean, they never wavered from that point two days after the trees had been cut down. And to get back briefly to the attorney's fees issue, another reason why the fees kind of skyrocketed was the repeated motions to dismiss. I mean, there's been six complaints filed, none of which have survived a motion to dismiss. And hearing on the second, on defendant's motion to dismiss the second amended complaint, the court very clearly dismissed Ibrahim and Ansar and told plaintiff's counsel that, you know, and quite frankly warned plaintiff's counsel that to be weary of rule 137, but if they had sufficient facts where they could allege notice to Sufiya Ahmed, they could replete as to her only moving forward. Nonetheless, the third, fourth, and fifth amended complaints, the breach of contract counts were filed against Ansar and Ibrahim without leave of court. Do you need leave of court? Well, they were only granted leave to replete against Sufiya. So at that point, it was a final order. They never challenged, appealed, moved to reconsider the order that dismissed their second amended complaint and gave them leave to only replete as to Sufiya. But yet they kept doing it and we kept getting it knocked out. So, you know, years and years later. But the attorney's fees, you could say the attorney's fees certainly, one can argue, should be entitled to obtaining the injunction, no? Well, that, I would agree with that. That's a possible, that's a reasonable argument. However, the mandatory injunction count is still pending in the trial court. So there's a three count complaint. Our breach of contract count, count one, has been dismissed. Count three for mandatory injunction is still pending. It hasn't been dismissed. There was an order entered granting an injunction, I suppose. It was an agreed order several years ago, but. Nevertheless, it was entered. Nevertheless, it was entered. And if they are entitled to fees under count three, they can seek fees under count three. That doesn't mean count one has to go back down. I'd also like to address counsel's argument earlier that the deed was not recorded until after. So this, the trees were cut. Right. The trees were cut down very shortly after closing. You know, a day, maybe the day of closing. And, of course, as we know, that the deed gets mailed to the county and doesn't get recorded for a few weeks. The deed wasn't recorded until the end of November. So, but this lawsuit wasn't filed until much, much later. By the time the lawsuit was filed, the land trust had been the record owner for a great deal of time. I think that was not clear from counsel's argument because I think the question from the panel was whether the wrong party had been sued. And the response was more along the lines of they didn't know who the owner was. Maybe two days after closing, they didn't. But by the time the lawsuit was filed, they more than should have. Okay. So, in conclusion, I think it does just basically come down to the December 22nd letter. Counsel talks about additional opportunities that my client had to address the property manager. The only allegation in the complaint was the one meeting at the home site when the trees were cut down prior to the fines being assessed. So there were conversations with the property manager as the year, months and months and years went on. But prior to the fines being assessed, there was only the one brief meeting as the property manager came out to the house. The allegation of the complaint is that she did inform my clients that this would be against the rules. But at that time, they were already pointing out why their tree people said these trees have to come down. And then the next step would have been they could have given and relayed that to the board, but they never got the opportunity. So we're asking that you affirm the trial court. Thank you, Mr. Huesman. Thanks. Mr. Hollander, you may approach the court in rebuttal. Thank you, Justices. I want to begin with where counsel left off, which was the reasons for cutting down the trees. And the defendants in this case have put forth a variety of reasons. And in that January 4th letter indicated that they wanted to bring their landscaper to a board meeting to explain why the trees need to be cut down. But there is an affidavit in this case from that landscaper saying the trees were not diseased. There was no discussion of the trees being diseased. Nobody told me that that's why we were doing this. That affidavit is in the record at C-220. And so the notion that there was a good reason is, one, very suspicious and, two, not relevant. Because as counsel indicated, the bylaws do require that there be written notice, that there be written notice before going. And on that point, I would turn to you. What's the purpose of the written notice to the board? The written notice is because the landscaping in this community is of central importance. That written notice allows the board to have a say in designing what that looks like, approve the landscapers who come to the site and use it. So an opportunity to be heard and discuss the matter. You know where this is going. Pretty much what purpose of the notice is. The notice of it is to, when this community was created, the bylaws, the members of this association established that this was of central importance. The bylaws actually say that the landscaping is as important or more important than even architecture. Which is not unusual. The community liked this, right? Yeah. My point is, if I were to send you a notice saying, I'm going to cut three trees down, done. I've sent you my notice. I'm good. No, you need written approval from the board. And that approval involves? Submitting plans. And then this is an opportunity to be heard. Pretty much? Yes, Your Honor. Yes, Your Honor. Okay. But I also wanted to address counsel's point that there was one conversation and one conversation only before this meeting. And that's simply not true. We allege in paragraph 21 of our complaint that the Midwest Club's property manager verbally informed Ibrahim Ahmed that this was a breach. In each of the three letters attached to the complaint, the two authored by us and the one by the Ahmeds, there are references not only to the Midwest Club's property manager, but also the gate guard informing them both before and after these trees were cut down. But that's not the same as the board, is it? The property manager and the gatekeeper, are they speaking for the board? The gatekeeper does not. The property manager under the bylaws has authority to represent the board. And that's the same as the hearing? I'm sorry. Go ahead. Counsel was referring to between the time the trees were cut down and the December 2nd meeting, there was one conversation. I don't want to put words in his mouth, but that's certainly what I understood. I think that's right. I think that there was one in-person conversation as well as phone calls. And this is even in the defendant's affirmative defenses. They say that shortly after their contractors began removing branches, Sue Chelios came to the property. They had a conversation where she pointed out that it was a violation, but apparently she orally told them, oh, it's fine, go ahead. Then she came back afterwards and told them this is a violation of the bylaws. That's at page C2672. But that couldn't really supplant or replace what is called a meaningful opportunity, because, you know, you can see where this thing is going. If the Ahmed family said that she told us this was okay, you're going to turn around every board and say, wait a minute. She doesn't decide for the whole board this is okay. So it works both ways here. I understand that, Your Honor. But I would refer you back to the text of the act, which says notice an opportunity to be heard. But the case stuff is meaningful. The meaning of informality, you send us a letter, we'll ignore it, and you're going to say, well, we gave you the opportunity, at least. So what? What was the meaningful opportunity? So at this point, I'll direct the court to Hayashi, which we cite, and to board of managers, which the defendant cites. And in both of those cases, under those circumstances, the court, the appellate court, in the case of board of managers and the Supreme Court, and Hayashi said no in-person hearing is necessary. And Hayashi was a very different pattern about medical licenses. But the court in Hayashi – can I finish this? Sure. Okay. The court in Hayashi noted that there was an admitted breach. It was about – Hayashi was about medical license being revoked for a criminal conviction. And the court in that case noted there was – the central fact of this, in this case, the criminal conviction, was admitted and undisputed. And the doctor wanted to come in and explain these various mitigating circumstances, as the omens have sought to do. But the court said it doesn't matter. The statute is what it is. The purpose of that, there were no trial issues, so there's no purpose for a hearing. Similarly, in board of managers, which the defendant cited, which is a condo association case governed by a different but largely similar statute, the plaintiffs, the homeowners in that case invoked this notice and opportunity to be heard provision, said we didn't have a hearing. The court said, well, for one thing, that's inapplicable because that statute applies only to attorney's fees and not to fines, and only attorney's fees are issued in this case. But then the homeowners turned around and wanted to insist that the bylaws – the bylaws required notice and opportunity to be heard. And the court said, I don't see that in the bylaws. And the court concluded by saying this was an admitted breach. The condo owner had admitted to this breach, so no further due process or hearing was necessary. That's in board of managers. One other question. Did the guardhouse talk to them about cutting down the trees on April 23rd when they weren't given access to the gatehouse? On April 23rd? Right. April 23rd, they weren't given access to come into the gatehouse. I'm not sure about what happened on April 23rd. The reference I was making was to November 14th as the landscapers were coming onto the property. So in conclusion, I would just say that notice and opportunity to be heard is required, but it does not have to be in the form of a board hearing that's not supported by the statute or by well-established principles of due process. Thank you. Thank you. All right, thank you, Mr. Hellman. I'd like to thank both counsel for the quality of the arguments here this morning. The matter will, of course, be taken under advisement in a written decision from the court. We'll issue in due course.